UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **MICHELLE DAVIS REDMOND,** individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. _____ ) **CLASS ACTION** ) ) |
| **VOLKSWAGEN GROUP OF AMERICA, INC.,** | ) ) ) |
| Defendant. | ) |

## CLASS ACTION
## COMPLAINT

COMES NOW, Michelle Davis Redomond, Plaintiff in the above-styled action, files her Complaint both individually and on behalf of a class of similarly-situated individuals against the Defendants VOLKSWAGEN GROUP OF AMERICA, INC., (hereinafter, "Volkswagen"), and, in support thereof, shows as follows:

### INTRODUCTION

1. This nationwide class action concerns the intentional installation of so-called defeat devices on over 482,000 diesel Volkswagen and Audi vehicles sold in the United States since 2009 ("Defeat Device Vehicles"). Defendant marketed those vehicles as environmentally-friendly cars that possessed the holy grail of

automotive qualities:  extremely high fuel efficiency and performance, with very low emissions. Although Defendant successfully marketed these expensive cars as "green", their environmentally-friendly representations were a sham. Defendant did not actually make cars with those desirable and advertised attributes.

## JURISDICTION AND VENUE

2. This action arises under the U.S. Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715.

3. This Court maintains subject matter jurisdiction under 29 U.S.C. § 216(b), and 28 U.S.C. § 1337.

4. Venue is proper in this Court as the unlawful practices alleged herein have been committed within the Northern District of Alabama.

## PARTIES

5. Michelle Davis Redmond, Plaintiff, is a resident of Huntsville, Alabama.

6. Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a

citizen of New Jersey and Virginia. See 28 U.S.C. § 1332(d)(10).

7. At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Volkswagen and Audi brand names throughout the nation. Volkswagen and/or its agents designed the CleanDiesel engines and engine control systems in the Defeat Device Vehicles, including the "defeat device." Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

## FACTUAL ALLEGATIONS

### Facts Common to All Counts

8. This case arises due to the Defendant's purposeful and intentional breach of the laws of the United States, more specifically, the rules and regulations of the Environmental Protection Agency by selling in the United States vehicles manufactured by its affiliates Volkswagen AG and Audi AG that were equipped with a "defeat device in the cars to evade clean air standards which is illegal and a threat to public health." Defendant intentionally designed and sold cars that misled consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced and knowingly hid the truth about those cars.

9.  As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, that is at all other times that the vehicle is running, the emissions controls are suppressed.  This results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations. The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.[1]

10.  Contrary to Volkswagen's self-promotion as a "clean" of "eco-conscious" company, its diesel cars are unhealthy and unlawful.  Defendant touts itself as selling more diesel cars in the U.S. than every other brand combined and that the TDI lines of cars are running on "Clean Diesel"  Indeed, being both highly efficient and "clean" are the centerpieces of Defendant's diesel engine marketing campaign. "Clean Diesel" is in the very name of the vehicles about which Defendant intentionally mislead the public. [2]

---

[1]  *See* September 18, 2015 EPA News Release
[2]  *See http://www.vw.com/features/clean-diesel/*

11. Defendant bolsters its apparent environmental bone fides by trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

12. According the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Affected Vehicles"): model year 2009-2015 VW Jetta; model year 2009-2015 VW Beetle; model year 2009-2015 VW Golf; model year 2014-2015 VW Passat; and model year 2009-2015 Audi A3. Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

13. Defendant also launched a "Think Blue" program, which they explained is part of their policy of being "more responsible on the road and more environmentally conscious—not just in our cars."

14. Beyond merely advertising, Defendant supported and directed a website to promote its "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

15. Volkswagen has charged a substantial premium for the Affected Vehicles, ironically marketed by Volkswagen as "Clean Diesel." For example, for

the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780. The base TDI S Clean Diesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The Clean Diesel premium for the highest trim Jetta model is substantially higher: The highest level gas Jetta SE has a starting MSRP of $20,095, while the Clean Diesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

16. Unfortunately for consumers who bought Defendant's cars, Defendant has designed and sold cars that emit pollutants at breath-taking levels, failing state and federal environmental regulations by incredible margins.

17. Most modern engines, including Volkswagen's "Clean Diesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency. These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "Clean Diesel" engines, operating the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature.

18. These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

19. Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

20. Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the

engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

21.     In short, this software allows Defendant's diesel vehicles to meet emissions standards in labs or state testing stations, while permitting the vehicles to emit nitrogen oxides (NOx) at up to 40 times the standard allowed under United States laws and regulations during the normal operation of the vehicles.

22.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with    premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at an acute risk of health effects from these pollutants.

23.     The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity. Under     federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during

normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal laws.

24. Defendant charges substantial premiums for the Defeat Device Vehicles. For example, for the 2015 Volkswagen Jetta, the base S model with a gasoline engine has a starting MSRP of $18,780. The base TDI S Clean Diesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The Clean Diesel premium for the highest trim Jetta models with a comparable gasoline engine is substantially higher: The Jetta SE has a starting MSRP of $20,095, while the Clean Diesel TDI SEL MSRP is $26,410, a 31% premium.

25. These premiums occur across all of the vehicles in which Defendant installed its "defeat device" for emissions testing. The table below sets forth the price premium for each comparable base, mid-level, and top-line trim for each affected model:

**CleanDiesel Price Premiums**

| Model | Base | Mid-level | Top-line |
|---|---|---|---|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

26. Although the EPA has ordered Defendant to recall the Defeat Device Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation, purchasers of the Defeat Device Vehicles have and will continue to suffer significant harm. First, Volkswagen will not be able to make the Defeat Device Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Defeat Device Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.

27. Second, this will necessarily result in a diminution in value of every Defeat Device Vehicle. Not only did Class members pay too much for cars now worth substantially less, but they will end up paying more to fuel their less efficient cars over the years they own their vehicles.

28. As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit 40 times the allowed levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

29. Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Volkswagen recalls the Defeat Device Vehicles and degrades the CleanDiesel engine performance in order to make the Defeat Device Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend more on fuel and will not benefit from the performance qualities of their vehicles as advertised. Moreover, Defeat Device Vehicles will necessarily be worth less in the used marketplace because of their decrease in performance and efficiency, which means that owners of Defeat Device Vehicles will not be able to recoup nearly as much value in the future.

30. Volkswagen's deliberate strategy to value profit over the truth, human health, and the environment, has caused serious harm to consumers

31. According to media sources, Defendant's CEO, Martin Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendant would be suspending sales of some 2015 and 2016 vehicles with 2.0 liter diesel engines. While Defendant's candor about its breach of trust is notable, it cannot compensate Plaintiffs and Class members for the damages they have incurred.

## Named Plaintiff Allegations

32. Plaintiff Michelle Davis Redmond purchased a 2012 Volkswagen Jetta TDi in April of 2012 from Hiley Volkswagen in Huntsville, Alabama. Plaintiff still owns the car.

33. Plaintiff purchased the car specifically for its fuel efficiency and "Clean Diesel" technology.

34. On September 21, 2015, Plaintiff first learned of Volkswagen scheme to defraud the Environmental Protection Agency and that her car does not, in fact, meet all regulatory requirements as she had previously understood.

## Class Allegations

35. Plaintiff seeks to represent a Class of plaintiffs as follows:

    All United States consumers who purchased a Volkswagen "Defeat Device Vehicle."

    And

    All Alabama consumers who purchased a Volkswagen "Defeat Device Vehicle."

36. The proposed class should be certified under RULE 23(a) and RULE 23(b)(2) and/or (b)(3).

37. **Numerosity:** Plaintiff believes that the Classes she seeks to represent exceed one-hundred class members.

38. **Commonality & Predominance**: Common questions of law or fact predominate over individualized questions. These questions include, but are not limited to, the following:

    a. Whether Defendant's automobiles meet the EPA emission requirements;

    b. Whether Defendant installed a "defeat device" in order to make it appear that its automobiles meet the EPA emission requirements;

    c. Whether such conduct is deceptive;

    d. Whether such conduct is violates the Alabama Deceptive Trade Practices Act;

    e. Whether such conduct violates its conduct with its customers;

    f. Whether the Defendants misrepresented that its automobiles met the EPA emission requirements in order to charge a fee or obtain new customers;

    g. Whether injunctive relief, restitution and/or other equitable relief is an appropriate remedy to correct the alleged violations.

39. **Typicality:** Plaintiff's claims are typical of the claims that a Class member could assert for Defendant's conduct of misrepresenting that its automobiles meet the EPA emission requirements.

40. **Adequacy:** Plaintiff does not have any conflicts with the proposed

Classes and there are no defenses (to Plaintiff's knowledge) that are unique to Plaintiff's circumstances. Plaintiff has also retained counsel who are well qualified and experienced in prosecuting class actions.

41. **Rule 23(b)(2):** Defendants acted in a uniform manner towards the putative Class members making injunctive, declaratory and other equitable relief appropriate.

42. **Rule 23(b)(3)**: As noted above, common questions of law or fact predominate over individualized inquiries. The class action is a superior method for adjudicating these claims because it provides for a more efficient method of resolving questions over the legality of the Defendants' practices and without a class action it is unlikely that absent class members would prosecute this case on an individual basis given the amounts in controversy.

## CAUSES OF ACTION

### Count I
### Breach of Contract
### (Duty of Good Faith & Fair Dealing)

43. Plaintiff incorporates by reference the allegations in paragraphs 1 through 42.

44. The installation of the "defeat device" was not authorized under the terms of Plaintiff and Class members' contract with Defendant.

45. Defendants breached the contract by, among other things, installing

the "defeat device," which constituted a breach of the obligation of good faith and fair dealing implied as term of Plaintiff and Class members' contract with Defendant.

46. Plaintiff and Class members were injured as a result of the Defendants' breach of contract.

## Count II
## Fraudulent/Reckless Misrepresentation

47. Plaintiff incorporates by reference the allegations in paragraphs 1 through 42.

48. Defendant misrepresented that Plaintiff and Class members' met all EPA environmental regulations and did not contain a "defeat device" specifically designed to defeat emission testing programs.

49. Defendant knew that its representation was false and/or recklessly disregarded that truth of the representation.

50. Plaintiff and Class members were injured as a result of Defendant false and/or reckless misrepresentations.

## Count III
## Negligent Misrepresentation

51. Plaintiff incorporates by reference the allegations in paragraphs 1 through 42.

52. Defendants Volkswagen represented to Plaintiff and Class members

that their mobile plan allowed them "unlimited wireless broadband access."

53. Defendants Volkswagen lacked reasonable grounds for believing the truth of this representation because, Defendants Volkswagen knew or should have known that it created a vehicle that it marketed as able to meet all EPA emissions standards when in fact it did not.

54. Plaintiff and Class members justifiably relied on the representation that they purchased the cars.

55. Plaintiff and Class members were injured as resulted of Volkswagen's negligent misrepresentation.

## Count IV
## Unjust Enrichment

56. Plaintiff incorporates by reference the allegations in paragraphs 1 through 42.

57. Defendants Volkswagen charged Plaintiffs and retained a fee for a vehicles that it sold marketed to meet the EPA emission standards at a higher rate than other vehicles offered when in fact said vehicles did not meet the standards.

58. Retention of such proceeds (or any other benefit received) also constitutes an unjust and unreasonable charge, retention of monies and/or profits belonging to and/or obtained from Plaintiff and Class members.

## Count V
## Violations of the Alabama Deceptive Trade Practices Act
### ALA. CODE 1975 § 8-19-1 *et seq.*

59. Plaintiff incorporates by reference the allegations in paragraphs 1 through 42.

60. Plaintiff Michelle Davis Redmond brings this claim on behalf of herself and the Alabama Subclass.

61. Defendant's misrepresentations, active concealment, and failures to disclose violated the Alabama Deceptive Trade Practices Act ("DTPA") in the following manner:

a. Defendant misrepresented that its service plans, phones, and other products had characteristics, benefits, qualities or uses that they did not have (Ala. Code § 8-19-5(5));

b. Defendant misrepresented that its service plans, phones, and other products were of a particular standard, quality, and/or grade when they were of another (Ala. Code § 8-19-5(7));

c. Defendant advertised its service plans, phones, and other products with an intent not to sell them as advertised (Ala. Code § 8-19-5(9));

62. Said conduct is generally and specifically within the meaning of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 et seq. and in the course of business that is prohibited, unfair, and deceptive.

63. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

64. Defendant's misrepresentations and omissions were material to Plaintiff Michelle Davis Redmond and members of the Alabama Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the Alabama Subclass known the truth, they would have acted differently.

65. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

66. As a direct and proximate result of the above described practices, Plaintiff Michelle Davis Redmond and members of the Alabama Subclass sustained damages in an amount to be proven at trial. WHEREFORE, premises considered, Plaintiff respectfully requests that the Court accept jurisdiction over this action and enter a judgment for Plaintiff as follows:

   A. Determining that the action is properly maintainable as a class action pursuant to RULE 23 of the FEDERAL RULES OF CIVIL PROCEDURE;

   B. Enter an injunction directing Defendants to perform an equitable accounting over the fees improperly charged and unjustly retained, create a constructive trust, and disgorge the *res* of said constructive trust to the putative Class members via

       resulting restitution;

C.    To the extent the members of the putative Class members cannot be located, said disgorgement via restitution should be *cy pres*.

D.    Entering judgment against Defendants for compensatory and, where applicable, statutory damages;

E.    Entering judgment against Defendants for the cost of this action including a reasonable attorney fee;

F.    Entering judgment against Defendants for interest; and

G.    Granting such other, different and further relief, including equitable, as this Court deems just and proper.

Submitted this the 21st day of September, 2015.

                                       s/ Eric J. Artrip
                                       D. Anthony Mastando (ASB-0893-X32B)
                                       Eric J. Artrip (ASB-9673-I68E)
                                       MASTANDO & ARTRIP, LLC
                                       301 Washington St., Suite 302
                                       Huntsville, Alabama  35801
                                       Phone:      (256) 532-2222
                                       Fax:           (256) 513-7489
                                       tony@mastandoartrip.com
                                       artrip@mastandoartrip.com

DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:
    **VOLKSWAGEN GROUP OF AMERICA, INC.**
    **150 SOUTH PERRY STREET**
    **MONTGOMERY, AL 36104**